IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LAUREL J. PADGETT, | ) | CASE NO. 1:15 CV 839 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| Defendant. | ) | **ORDER** |

**Introduction**

Before me[1] is an action by Laurel J. Padgett under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her application for supplemental security income.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4] Under my initial[5] and procedural[6] orders, the parties have

---

[1] ECF # 14. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 10.

[4] ECF # 11.

[5] ECF # 6.

[6] ECF # 12.

briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

## Facts

**A.  Background facts and decision of the Administrative Law Judge ("ALJ")**

Padgett, who was 52 years old at the time of the administrative hearing,[11] has a high school education[12] and currently lives with her son, who is 14 ½ years old.[13] She last worked in June 2013, when she was employed as a noon aide at the local elementary school.[14]

The ALJ, whose decision became the final decision of the Commissioner, found that Padgett had the following severe impairments: degenerative disc disease, carpal tunnel syndrome, depression/dysthmia, personality disorder, attention deficit disorder, and headaches/cervicalgia/migraines (20 CFR 416.920(C)).[15]

---

[7] ECF # 22 (Commissioner's brief); ECF # 16 (Padgett's brief) ECF #21 (Padgett's Amended brief).

[8] ECF # 24 (Commissioner's charts); ECF # 16-1 (Padgett's charts) and ECF # 21-1 at 1 (Padgett's amended charts).

[9] ECF # 15 (Padgett's fact sheet).

[10] ECF # 26.

[11] ECF # 15 at 2.

[12] *Id.*

[13] Transcript ("Tr.") at 36.

[14] Id. at 40.

[15] Tr. at 13.

After concluding that the relevant impairments did not meet or equal a listing, the ALJ made the following finding regarding Padgett's residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work, meaning she can lift and carry 10 pounds frequently and 20 pounds occasionally. She can sit, stand, and walk for six hours in an eight-hour workday as defined in 20 CFR 416.967(b) except she is unlimited in pushing and pulling other than shown for lifting and carrying. She can occasionally stoop and crouch. She can occasionally reach overhead with the left and right arms. She can never climb ladders, ropes and scaffolds. She can perform simple routine tasks (unskilled work) without strict production demands (no fast pace or high production quotas). She can interact occasionally with others in a superficial manner (meaning of a short duration for a specific purpose). She can work in a relatively static environment (with infrequent change) where changes can be explained. She can perform low stress work meaning no arbitration, negotiation, responsibility for the safety of others or supervisory responsibility. She can perform frequent handling and fingering.[16]

Padgett has no past relevant work experience.[17]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Padgett could perform. The ALJ, therefore, found Padgett not under a disability.

## B. Issues on judicial review

Padgett asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Padgett's challenge presents the following issue for decision on judicial review:

---

[16] *Id.* at 15.

[17] *Id*. at 20.

- The ALJ did not make specific findings about whether or not the opinions of treating sources should receive controlling weight or give reasons for failing to do so. Rather she gave the opinions little or limited weight. Does substantial evidence, identified in the ALJ's decision, support the implicit findings of no controlling weight and the express finding of limited or little weight?

For the reasons set forth below, the decision of the Commissioner will be reversed as not supported by substantial evidence.

## Analysis

**A.    Standards of review**

*1.    Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[18]

---

[18] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[19] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[20]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

## 2. *Treating physician rule and good reasons requirement*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[21]

---

[19] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[20] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[21] 20 C.F.R. § 416.927(d)(2). The companion regulation for disability insurance benefits applications is § 404.1527(d)(2). Padgett filed only an application for supplemental security income benefits.

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[22]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[23] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[24]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[25] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[26] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[27] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[28]

---

[22] *Id.*

[23] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[24] *Id.*

[25] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[26] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[27] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[28] *Id.* at 535.

In *Wilson v. Commissioner of Social Security*,[29] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[30] The court noted that the regulation expressly contains a "good reasons" requirement.[31] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[32]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[33] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[34] The former confers a substantial, procedural right on

---

[29] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[30] *Id.* at 544.

[31] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[32] *Id.* at 546.

[33] *Id.*

[34] *Id.*

-7-

the party invoking it that cannot be set aside for harmless error.[35] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[36]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[37] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[38] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[39] *Blakley v. Commissioner of Social Security*,[40] and *Hensley v. Astrue*.[41]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[42] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent

---

[35] *Id.*

[36] *Id.*

[37] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

[38] *Id.* at 375-76.

[39] *Rogers*, 486 F.3d at 242.

[40] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[41] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[42] *Gayheart*, 710 F.3d at 376.

with other substantial evidence in the administrative record.[43] These factors are expressly set out in 20 C.F.R. § 416.927(d)(2). Only if the ALJ decides not to give the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 416.927(d)(2)(i)-(ii), (3)-(6).[44] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[45]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[46] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[47] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(d)(i)-(ii), (3)-(6) of the regulations,[48] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions

---

[43] *Id.*

[44] *Id.*

[45] *Rogers*, 486 F.3d at 242.

[46] *Gayheart*, 710 F.3d at 376.

[47] *Id.*

[48] *Id.*

and the treatment reports.[49] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[50]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.
>
> To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[51]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[52] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[53] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[54] or that objective medical evidence does not support that opinion.[55]

---

[49] *Id.*

[50] *Id.*

[51] *Id.*

[52] *Rogers*, 486 F.3d 234 at 242.

[53] *Blakley*, 581 F.3d at 406-07.

[54] *Hensley*, 573 F.3d at 266-67.

[55] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[56] The Commissioner's *post hoc* arguments on judicial review are immaterial.[57]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[58]

- the rejection or discounting of the weight of a treating source without assigning weight,[59]

---

[56] *Blakley*, 581 F.3d at 407.

[57] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147, at *8 (N.D. Ohio Jan. 14, 2010).

[58] *Blakley*, 581 F.3d at 407-08.

[59] *Id.* at 408.

-11-

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[60]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[61]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[62] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[63]

The Sixth Circuit in *Blakley*[64] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[65] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[66]

---

[60] *Id.*

[61] *Id.* at 409.

[62] *Hensley*, 573 F.3d at 266-67.

[63] *Friend*, 375 F. App'x at 551-52.

[64] *Blakley*, 581 F.3d 399.

[65] *Id.* at 409-10.

[66] *Id.* at 410.

In *Cole v. Astrue*,[67] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[68]

**B.    Application of standards**

This case turns on whether the ALJ properly assigned less than controlling weight to the opinions of two treating sources, and then properly articulated good reasons for that decision.

Once again that the ALJ's treatment of the treating source opinions, and the assignment of weight to opinions from other sources, did not even attempt to follow the two-step analytical framework set out in the regulations and explained by *Gayheart*. This failure is unfortunately not a rare occurrence, and in the hope that noting this error would result in its correction, I have frequently taken time in an opinion to detail the reasons for the two step analysis and re-emphasize the importance of following the regulations in this regard.[69]

But, this approach has had the same effect as King Canute's famous command that the tides stop washing ashore. Therefore, although I remain firmly convinced that *Gayheart*

---

[67] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[68] *Id.* at 940.

[69] *Allums v. Comm'r of Soc. Sec.*, 975 F. Supp.2d 823, 831-33 (N.D. Ohio 2013); *Smith v. Comm'r of Soc. Sec.*, No. 5:13CV870, 2014 WL 1944247, at **7-8 (N.D. Ohio, May 14, 2014).

correctly states the law, and requires that a specific process be followed in both evaluating treating source opinions and then assigning weight to opinions that are not found to have controlling weight, I will not here restate my objections as to how the ALJ here handled these opinions as concerns the *Gayheart* rubric. Rather, because the ALJ here plainly did not advance good reasons for the decision to afford lesser weight to the treating source opinions, I will focus on that issue as dispositive in this matter.

As concerns the two opinions of Dr. Nancy Lazarescu, D.O., who was Padgett's primary care physician, the ALJ acknowledged Lazarescu as a treating source,[70] but then only assigned her opinions "little weight" because he concluded that the first opinion of less than sedentary limitations was "inconsistent with the claimant's activities and the documentation in the record,"[71] and the second opinion as to pain was essentially undermined by Dr. Lazarescu's finding that this pain had a psychological basis - a finding that the ALJ appears to assume lay behind Dr. Lazarescu's earlier decision to defer any findings about Padgett's mental health limitations to the findings of her treating psychologist.[72]

Similarly, the ALJ assigned only "little weight" to the opinion of Dr. Michael Primc, who the ALJ also acknowledged to be a treating source.[73] In this instance, the ALJ

---

[70] Tr. at 19.

[71] *Id.*

[72] *Id.*

[73] *Id.*

concluded that the treatment notes are "generally inconsistent" with Dr. Primc's opinion, and also do not show that Padgett's condition got worse.[74]

Instead of relying on these opinions, the ALJ gave "great weight" to the opinion of Dr. Herschel Pickholtz, the consultative examining psychologist, who found that Padgett was "exaggerating her symptoms," and had only, at worst, a moderate depressive disorder, a specific phobia of driving on highways, and unspecified anxiety disorder.[75]

While Padgett here focuses more on Dr. Primc's opinion than that of Dr. Lazarescu, the ALJ's reasons for discounting the opinion of Dr. Lazarescu foreshadow the defective reasoning later used in the case of Dr. Primc. First, the ALJ states that Dr. Lazarescu "last saw [Padgett] on May 17, 2011,"[76] In fact, Dr. Lazarescu treated Padgett through August of 2013 - a point that the ALJ herself seems to accept later in the opinion where she states that Padgett "had one visit [with Dr. Lazarescu] in 2012; and saw her three times in 2013."[77]

As concerns Dr. Primc's opinion, the ALJ essentially rejected the 2013 functional opinion of Dr. Primc, who had been treating Padgett from 2006 through 2013, in favor an opinion from a consultative examiner who saw Padgett once in 2012.[78] The reasons given

---

[74] *Id*. at 20.

[75] *Id.* at 18.

[76] *Id*. at 19.

[77] *Id*.

[78] This potentially raises issues about the propriety of relying on the opinion a consulting examiner who did not have access to the complete, most recent treatment records or opinion of the treating source. Although an ALJ may rely on the opinion of a consulting

by the ALJ were that Dr. Primc's treatment notes "are generally inconsistent" with his opinion, and that those treatment notes "do not show a worsening of her condition."[79] As Padgett initially notes, the comment about a worsened condition is irrelevant at best, since Dr. Primc never asserted that Padgett's condition had deteriorated. Rather, Dr. Primc's opinion in 2013 was that Padgett had remained at the stated level of functioning since 2011.[80] Of greater importance, Padgett observes, consistent with the Sixth Circuit in *Friend*, that it is not enough to simply assert that a treating source opinion is inconsistent with the record, without identifying the particular discrepancies relied upon, and then explaining why "it is that the treating physician's conclusions get the short end of the stick."[81]

The Commissioner argues that although "the ALJ did not expressly discuss all the treatment notes from Dr. Primc ..., the ALJ clearly considered" that evidence, as established by citations in the opinion to parts of the record containing those notes.[82] The Commissioner then invites me to take the next step of inferring from the fact that the ALJ considered this evidence, that she must have drawn conclusions from that review that support her ultimate

---

physician who did not review the complete record, the ALJ should acknowledge that fact and then give good reasons as to why the opinion is nonetheless entitled to the weight given. *See, Blakely*, 581 F.3d at 409. Because of the flaws listed, the ALJ's opinion here will require remand without the need to consider this issue.

[79] *Tr.* at 20.

[80] *See, id.* at 351.

[81] *Friend*, 581 F.3d at 409.

[82] ECF # 22 at 12.

-16-

finding that Dr. Primc's opinion was inconsistent with his notes.[83] The Commissioner also seeks to turn the relevant inquiry on its head by asserting that it is Padgett who must somehow explain why Primc's treatment notes were consistent with his opinion.[84]

Plainly, the Commissioner's position here is untenable. It is the Commissioner who must articulate good reasons for not giving controlling weight to the opinion of a treating source. And it is the Commissioner who must articulate those reasons in the opinion in a way that clearly communicates the reasons for that decision to the claimant, and then permits meaningful judicial review of that decision by the reviewing court. Simply noting that portions of the record have been reviewed provides no specific, reviewable reasons as to why that evidence was judged inconsistent with the opinion of the treating source. Without a clear, precise statement of particular reasons for such a finding, I must reject any invitation to supply them after the fact by attempting to divine them from inferences and surmises concerning what the ALJ may or may not have been thinking when looking at certain parts of the record.

## Conclusion

For the reasons stated, the decision of the Commissioner in this case is reversed as not supported by substantial evidence, and the matter remanded for further proceedings consistent with this opinion.

---

[83] *Id*.

[84] *Id*. at 13.

IT IS SO ORDERED.

Dated: May 17, 2016 / s/ William H. Baughman, Jr.
United States Magistrate Judge